**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                                                      )<br>                            Plaintiff,  )<br>                                                      )<br>vs.                                              )<br>                                                      )<br>ADOLPH VARGAS, et al.,               )<br>                                                      )<br>                            Defendants.  )<br>_____) | Case No. 2:09-cr-00113-GMN-PAL<br><br>**ORDER**<br><br>(Mtn to Sever - Dkt. #142) |

This matter is before the court on Defendant Adolph Vargas' Motion to Sever (Dkt. #142). The court has considered the government's Response (Dkt. #149) and Defendant Vargas' Reply (Dkt. #153).

**BACKGROUND**

On October 13, 2010, the grand jury returned a Second Superseding Indictment (Dkt. #61), charging Vargas and his co-Defendants Jose Lopez-Buelna, Jesus Gastelum, Erik Dushawn Webster, and Roberto Lopez in Count One with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1). Count Two charges Vargas, Lopez-Buelna, Gastelum, Webster, and Lopez with Conspiracy to Launder Money in violation of 18 U.S.C. § 1956. Counts Three and Four charge co-Defendants Lopez-Buelna and Gastelum with Money Laundering - Promotion in violation of 18 U.S.C. § 1957. Count Five charges Gastelum with Money Laundering - Monetary Transaction in violation of 18 U.S.C. § 1957. Count Six charges Defendant Erik Dushawn Webster with Money Laundering - Promotion in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (ii). Count Seven charges Defendant Lopez-Buelna, Gastelum, and Luis Vega-Rubio with Conspiracy to Commit Kidnaping in violation of 18 U.S.C. § 1201(a)(1), (c), and (g). Count Eight charges Lopez-Buelna with Kidnaping in violation of 18 U.S.C. § 1201(a)(1), (c), and (g) and 1201(a)(2). Count Nine charges Lopez-Buelna, Gastelum, and

Vega-Rubio with Conspiracy to Commit Hostage Taking in violation of 18 U.S.C. § 1203 (a). Count Ten charges Lopez-Buelna, Gastelum, and Vega-Rubio with Hostage Taking in violation of 21 U.S.C. §§ 841(a)(1) and 846. Vargas is joined for trial with co-defendants Lopez-Buelna, Gastelum, Webster, Vega-Rubio, and Lopez.

Relying on Rule 14(a) of the Federal Rules of Criminal Procedure, Vargas asserts that he will be severely prejudiced by his joinder with the other Defendants. He argues that he has a markedly different degree of culpability from his co-Defendants, and under the Supreme Court's ruling in *Zafiro v. United States*, 506 U.S. 534 (1993), he faces a heightened risk of prejudice. Specifically, Vargas argues that he did not participate in the kidnaping aspect of this case in any manner. Based upon the discovery provided by the government, Vargas asserts his participation in the drug conspiracy was over by April 29, 2008, and the kidnaping conspiracy did not begin until June, 2008. Vargas argues that the evidence that will be presented against Lopez-Buelna, Gastelum, and Vega-Rubio is highly inflammatory and emotionally charged and concerns a conspiracy involving the kidnaping of a six-year-old boy to pressure the child's grandfather to return drug money he had taken. Vargas asserts this evidence is admissible only against Lopez-Buelna, Gastelum, and Vega-Rubio, and it will be highly prejudicial to him despite any potential limiting instruction. He also asserts that the possibility of conviction based upon Vargas' association with Lopez-Buelna, Gastelum, and Vega Rubio is quite real, and the jury will be unable to compartmentalize that evidence when dealing with the separate charges against Vargas. He also contends that he will be prejudiced because of the media coverage of the child's kidnaping and recovery, which received national attention and was particularly intense in the Las Vegas media market. Vargas also submitted an affidavit of his attorney, William S. Pitman, as well as copies of various articles from the internet, to demonstrate the publicity surrounding the kidnaping.

In response, the government asserts that joinder of the charges in the Second Superseding Indictment is proper under Federal Rule of Criminal Procedure 8(a) because the offenses are logically related. Specifically, the government contends the money laundering was conducted to allow the alleged conspirators to receive profits from drug trafficking, and the abduction of the child was designed to coerce a co-conspirator into returning drug money he had allegedly taken from the criminal organization. The kidnaping and hostage taking was part of the same series of transactions involving

illegal drug distribution and money laundering.  Thus, the government crimes charged in the Second Superseding Indictment "are based on the same act or transactions, or are connected with or constitute parts of a common scheme or plan."  Vargas does not claim he was improperly joined under Rule 8(b).  Therefore, he must show evidence of particular prejudice to overcome the preference for joint trial of Defendants who are indicted together.  The government also states that any evidence offered against Vargas' co-Defendants is also admissible against Vargas himself because of the nature of a conspiracy charge, and it is not necessary that Vargas have been personally involved in the kidnaping.  The government also asserts that joinder of the Defendants is proper under Federal Rule of Criminal Procedure 8(b) because the Defendants all participated in the same series of transactions, and joinder does not require that all Defendants be charged in all counts of the Second Superseding Indictment.  With regard to the publicity about the kidnaping, the government points out that none of the news articles attached to the Motion to Sever mention Vargas, and in any event, any prejudice resulting from pretrial publicity should be determined during voir dire and can be counteracted by a limiting instruction.

In reply, Vargas reasserts that the media coverage of the kidnaping will unfairly prejudice him because of the associations with and references to Mexican drug cartels.  Vargas argues that he will not be able to receive a fair trial with his co-Defendants because the jurors will not be able to compartmentalize the evidence offered by Clem Tinnemeyer, the kidnaping victim's grandfather.  This, coupled with the heinous nature of the crimes alleged against the co-Defendants and Vargas' lack of involvement in the kidnaping conspiracy, present a significant danger that a joint trial will prevent the jury from making a reliable judgment about Vargas' guilt or innocence.

## DISCUSSION

### Fed. R. Crim. P. 8(b)

Vargas cites Rule 8(b) and Rule 14(a) in support of his motion to sever.  Fed. R. Crim. P. 8(b) governs joinder of defendants and provides:

> The indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

While Rule 8(a) governs joinder of offenses, Rule 8(b) governs when defendants may be joined for trial. "[M]ost courts have held that Rule 8(b) applies exclusively to issues of joinders of multiple defendants and that Rule 8(a) applies only in cases involving a single defendant charged with multiple offenses." *United States v. Irizarry*, 341 F.3d 273, 287 (3rd Cir. 2003), *cert. denied,* 40 U.S. 1140. The Ninth Circuit has held that Rule 8(a) applies only to joinder of offenses against a single defendant, and the provisions of Rule 8(b) control when more than one defendant is named in an indictment. *United States v. Satterfield*, 548 F.2d 1341, 1344 (9th Cir. 1977).

A claim of misjoinder of offenses or parties under Rule 8 is a question of law reviewed *de novo*. *United States v. Sanchez-Lopez*, 879 F.2d 541, 550 (9th Cir. 1989). In determining whether two or more defendants are appropriately joined for trial under Rule 8(b), the court examines whether two or more defendants are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. *See* Fed.R.Crim.P. 8(b). Mere factual similarity between the events is not a sufficient basis for joinder. *United States v. Vasquez-Velasco*, 15 F.3d 833, 843 (9th Cir. 1994). However, the term "transaction" is interpreted flexibly, and determining whether a "series" exists depends on whether there is a "logical relationship" between the transactions. *Id.* "A logical relationship is typically shown 'by the existence of a common plan, scheme, or conspiracy.'" *Id.* at 844 (internal citations omitted). A logical relationship may also be shown if the common activity constitutes a substantial portion of the proof of the joined charges. *Id.*

Rule 8(b) is construed liberally in favor of joinder because joint trials conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crimes to trial. *United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993)[1]. "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Defendants jointly charged in conspiracy cases are presumptively to be jointly tried." *Baker,* 10 F.3d at 1387 *(citing United States v. Escalante,* 637 F.2d 1197, 1201 (9th Cir.),

---

[1] *Baker* was overruled on other grounds by *United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000), which was, in turn, overruled on other grounds in *United States v. Buckland*, 289 F.3d 558 (9th Cir. 2002). However, the Ninth Circuit has recognized that *Baker*'s discussion of the legal principles governing severance of joint trials remains good law. *United States v. Fernandez*, 388 F.3d 1199, 1241 n.27 (9th Cir. 2004).

*cert. denied,* 449 U.S. 856 (1980)).  Furthermore, the Ninth Circuit noted in *United States v. Fernandez*, "[A] joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by the possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials."  388 F.3d at 1242.

### Fed. R. Crim. P. 14(a)

Rule 14 governs the severance of both defendants and charges.  *Vasquez-Velasco,* 15 F.3d at 845.  Even if joinder is proper under Rule 8(b), the court may sever the defendants' trials, order separate trials of counts, or provide other relief that justice requires if joinder "appears to prejudice a defendant or the government."  Fed.R.Crim.P. 14(a).  Rules 8(b) and 14 are designed to promote economy and efficiency and avoid multiple trials where those objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial. *See Zafiro,* 506 U.S. at 540; *Baker,* 637 F.3d at 1201.  The Ninth Circuit has recognized that "some prejudice is inherent in any joinder of defendants." *Baker,* 637 F.3d at 1201.  In deciding whether to sever properly-joined defendants, the court must weigh the potential for prejudice against the concern for judicial economy.  *United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977).  However, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.  "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39.

The court's power to order severance "rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar." *United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978).  The court's denial of a motion to sever is reviewed for abuse of discretion. *See Fernandez*, 388 F.3d at 1241.  "The test for determining abuse of discretion in denying severance under Rule 14 is whether a joint trial would be so prejudicial that the trial judge could exercise his discretion in only one way." *U.S. v. Escalante*, 637 F.2d at 1201.

/ / /

Prejudice under Rule 14(a) may result from: (1) the defendants' antagonistic or mutually exclusive defenses, *United States v. Angwin*, 271 F.3d 786, 795 (9th Cir. 2001), *overruled on other grounds, United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007); (2) inappropriate conduct by a co-defendant's attorney, for example, an opening statement blaming other defendants, *U.S. v. Gillam*, 167 F.3d 1273, 1277 (9th Cir. 1999); (3) a co-defendant's refusal to give exculpatory testimony in a joint trial due to the potential for self-incrimination, *United States v. Castro*, 887 F.2d 988, 998 (9th Cir. 1989); (4) a co-defendant's non-judicial confession which incriminates the defendant, even when the confession is introduced only against the co-defendant, *Bruton v. United States*, 391 U.S. 123, 137 (1968); (5) admission of evidence admissible only against a co-defendant; *United States v. Cruz*, 127 F.3d 791, 799 (9th Cir. 1997), *abrogated on other grounds, United States v. Jiminez Recio*, 537 U.S. 270; and (6) a co-defendant's comment on a defendant's failure to testify, *De Luna v. United States*, 308 F.2d 140, 141 (5th Cir. 1962), *cited with approval, United States v. De La Cruz Bellinger*, 422 F.2d 723, 726-27 (9th Cir. 1970).

The Supreme Court has also recognized that "[w]hen many defendants are tried together in a complex case, and they have markedly different degrees of culpability, joinder may be prejudicial because evidence of a co-defendant's wrongdoing could erroneously lead a jury to conclude that a defendant was guilty by mere association." *Zafiro*, 506 U.S. at 539. The Ninth Circuit has also recognized that prejudice may result from a "mega-trial" involving a large number of defendants and charges. *Baker,* 10 F.3d at 1390-92. In *Baker,* fifteen of the twenty-four defendants originally charged in a forty-four count superseding indictment were tried together. On appeal following the criminal convictions, the Ninth Circuit described this case as "one of the lengthiest and costliest trials in this nation's history." *Id.* at 1386. The Ninth Circuit commented that it was called upon to consider not only the approximately fifty issues raised on appeal "but the practical and human limitations of our jury system itself." *Id.* The trial lasted more than sixteen months. Over 250 witnesses were called and thousands of exhibits were admitted. Presentation of the evidence involved over 2,000 narcotics transactions spanning an eleven-year period. The decision described the "staggering hardships" and burdens that a joint trial of the scope and duration of the *Baker* trial entailed, finding that "these burdens fall not only on the defendants, but on defense counsel, prosecutors, the jury, the district court, the court

of appeals, and the taxpayers." *Id.* at 1390-92. The court concluded that "the risk of prejudice to the defendants increases sharply with the number of defendants and the length of the trial" but held the district court did not abuse its broad discretion in denying the defendants' motion for severance. *Id.* at 1390

In this case, Vargas and his co-Defendants Jose Lopez-Buelna, Jesus Gastelum, Erik Dushawn Webster, and Roberto Lopez in Count One with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1). Count Two charges Vargas, Lopez-Buelna, Gastelum, Webster, and Lopez with Conspiracy to Launder Money in violation of 18 U.S.C. § 1956. Counts Three and Four charge co-Defendants Lopez-Buelna and Gastelum with Money Laundering - Promotion in violation of 18 U.S.C. § 1957. Count Five charges Gastelum with Money Laundering - Monetary Transaction in violation of 18 U.S.C. § 1957. Count Six charges Defendant Erik Dushawn Webster with Money Laundering - Promotion in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (ii). Count Seven charges Defendant Lopez-Buelna, Gastelum, and Luis Vega-Rubio with Conspiracy to Commit Kidnaping in violation 18 U.S.C. § 1201(a)(1), (c), and (g). Count Eight charges Lopez-Buelna with Kidnaping in violation of 18 U.S.C. § 1201(a)(1), (c), and (g) and 1201(a)(2). Count Nine charges Lopez-Buelna, Gastelum, and Vega-Rubio with Conspiracy to Commit Hostage Taking in violation of 18 U.S.C. § 1203 (a). Count Ten charges Lopez-Buelna, Gastelum, and Vega-Rubio with Hostage Taking in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Specifically, the Second Superseding Indictment alleges that the manner and means of the conspiracy to distribute a controlled substance included Vargas', Lopez-Buelna's, Gastelum's, and Lopez's use of hidden compartments in motor homes to transport illegal drugs from Mexico to the United States, distribute cocaine in the United States and Canada, and transport the proceeds from the drug distribution back to Mexico. Defendant Vargas is alleged to have instructed the drivers of the motor homes and also alleged to have taken other actions to ensure the drugs and drug proceeds were delivered to customers and/or Defendants.

With regard to Count One, the government alleges the following overt acts against Vargas: that he provided instructions to two unindicted co-conspirator drivers, Clemens Tinnemeyer and Terri Leavy, on or between November 27, 2007, and December 2, 2007, regarding movement of the motor

home. Vargas is alleged to have received the motor home's keys from Tinnemeyer near La Guardia Airport in New York on December 2 or 3, 2007.  Vargas allegedly flew from New York to Los Angeles on December 6, 2007, with an airline ticket paid for by Lopez-Buelna's credit card.  Around January 20, 2008, Vargas and Gastelum allegedly crossed the U.S./Mexico border at Nogales, Arizona, and on January 21, 2008, Vargas flew from Las Vegas to New York with a ticket paid for by Lopez-Buelna's credit card.  On January 22, 2008, Vargas flew from New York to Atlanta, Georgia.  Between January 24, 2008, and January 28, 2008, Vargas allegedly met Tinnemeyer and Leavy in Georgia and instructed them to drive to a location near La Guardia Airport in New York.  In February 2008, Vargas instructed Tinnemeyer and Leavy to drive the motor home to Mexico via Nogales, Arizona.  After crossing the border on February 11, 2008, Tinnemeyer and Leavy met with Gastelum and Vargas and followed them to Culiacan, Sinoloa, Mexico.  On February 13, 2008, Tinnemeyer drove the motor home from Culiacan to Mexico City "in tandem" with Gastelum and Vargas.  On March 1, 2008, Vargas crossed into Canada at Niagara Falls, Rainbow Bridge, Ontario, Canada.  On April 29, 2008, Vargas crossed into Mexico at Nogales, Arizona.

In June 2008, Tinnemeyer and Leavy discovered $4.5 million in the hidden compartment of the motor home.  Despite instructions from Gastelum to return to Las Vegas, Tinnemeyer and Leavy drove the motor home to Bay St. Louis, Mississippi.  Lopez-Buelna and Gastelum visited a tenant of Tinnemeyer's between May and June 2008, inquiring about Tinnemeyer's whereabouts.  Throughout June and July 2008, Lopez-Buelna continued looking for Tinnemeyer and offered money to Tinnemeyer's friends to help look for him.  In September 2008, Gastelum and Lopez-Buelna told Webster that if Tinnemeyer and Leavy did not return the money they had taken, they were going to kidnap Tinnemeyer's grandson.

With regard to Count Two, the overt acts alleged in the Second Superseding Indictment state that Vargas purchased hotel rooms for himself, Tinnemeyer, and Leavy near La Guardia Airport in New York in December 2007.  In February 2008, Vargas allegedly paid Tinnemeyer $10,000.00 to drive a motor home from Culiacan to Mexico City.  Periodically, Lopez-Buelna, Gastelum, and Vargas provided Tinnemeyer and Leavy with money to fund the motor home trips and to repair the motor home.

Each of the charges in the Second Superseding Indictment (Dkt. #61) relate to a scheme allegedly used by Defendants to distribute narcotics and money via mobile homes throughout the United States, Canada, and Mexico. Each charge arises out of the same series of transactions. *See U.S. v. Jawara,* 474 F.3d 565, 573 (9th Cir. 2007) (court inquires whether commission of one of the offenses either depended upon or led to the commission of the other; or whether proof of one act either constituted or depended upon proof of the other); *see also United States v. Anderson*, 642 F.2d 281, 284 (9th Cir. 1981) (stating "When the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate") (*citing United States v. Roselli*, 432 F.2d 879, 899 (9th Cir. 1970)). Vargas claims he had no involvement in the conspiracy after April 28, 2008. The events which led to the kidnaping allegedly began in June 2008 and involved the same motor home, the same alleged trafficking conduct, and many of the same actors. The Defendants are, therefore, properly joined in the same Second Superseding Indictment (Dkt. #61) pursuant to Fed.R.Crim.P. 8(b).

This conclusion does not end the court's analysis because "Rule 14 recognizes that even when counts are properly joined under Rule 8(b), severance of the counts may be appropriate to avert prejudice to a defendant. *Vasquez-Velasco*, 15 F.3d at 845. A defendant moving to sever has a heavy burden of showing that a joint trial would compromise a specific right or prevent the jury from making a reliable judgment about guilt or innocence. *Baker*, 10 F.3d at 1387-89. Vargas has not demonstrated that sufficient prejudice would result to justify severance, especially where, as here, the Conspiracy to Distribute and the Conspiracy to Kidnap charges in the Second Superseding Indictment (Dkt. #61) are related such that evidence would overlap if severance were ordered. Although Vargas was not charged in the Conspiracy to Kidnap or Kidnaping charges, the Conspiracy to Distribute charge contains many facts which led up to the kidnaping of the child in this case. As Count One is alleged in the Second Superseding Indictment, the kidnaping of Tinnemeyer's grandson occurred because Tinnemeyer and Leavy stole money from the drug trafficking operation Defendants were allegedly running. Vargas had significant interaction with Tinnemeyer and Leavy, directing them throughout the alleged long-term drug conspiracy. The evidence in support of Conspiracy to Distribute charge will overlap with the evidence to support the Conspiracy to Kidnap charge. Severance will not alleviate this overlap of evidence. *See, e.g., United States v. Johnson*, 297 F.3d 845, 855-56 (9th Cir. 2002) (denial of severance

upheld because spillover evidence was limited by jury instructions and not "manifestly prejudicial" because it could have been admitted in separate trials).

The United States Supreme Court has held that the risk of prejudice posed by joint trials can be cured by proper jury instructions. *Zafiro*, 506 U.S. at 540-41; *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998). Furthermore, "[a] defendant seeking severance based upon the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge." *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) (citation omitted). Vargas has not shown that the prejudice from a joint trial would deprive him of a fair trial, and severance is not justified on this ground.

Likewise, Vargas' claim that he has already been prejudiced by the press surrounding his co-Defendants and the kidnaping is insufficient to warrant severance. Any potential prejudice related to negative publicity associated with this case is a matter to be addressed during jury selection. Although a defendant is constitutionally entitled to an impartial jury, this requirement does not limit jury membership to persons completely ignorant of the facts and issues of a case. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *United States v, Croft*, 124 F.3d 1109, 1116 (9th Cir. 1997). The court must decide whether publicity has caused jurors to form opinions such that they cannot impartially judge the guilt or innocence of a defendant based upon evidence presented at trial. *See Patton v. Yount*, 467 U.S. 1025, 1035 (1984); *United States v. Collins*, 109 F.3d 1413, 1416-17 (9th Cir. 1997). Furthermore, any inflammatory evidence admitted against a co-defendant may be neutralized by an appropriate cautioning instruction. *See United States v. Castro*, 881 F.2d 988, 998 (9th Cir. 1989).

In conclusion, the nature of the Conspiracy to Distribute and Conspiracy to Launder Money charges against Vargas and the Conspiracy to Kidnap and Kidnaping charges involve a substantial overlap in the evidence. A joint trial is especially desirable in a conspiracy case. *Fernandez*, 388 F.3d at 1199. Thus, although there is certainly a possibility of some prejudice to Vargas (and his co-Defendants) in a joint trial, the court finds that the interests of judicial efficiency outweigh the possible prejudice. The court also finds that this case is not so complex that the jury is unlikely to be able to compartmentalize the evidence and evaluate each defendant's culpability individually. Moreover, the
///

1  appropriate use of limiting instructions will reduce or eliminate any possibility of prejudice arising from
2  a joint trial.
3      For all the foregoing reasons,
4      **IT IS ORDERED** that Vargas' Motion to Sever (Dkt. #142) is DENIED.
5  Dated this 8th day of November, 2010.

                                              _____
                                              PEGGY A. LEEN
                                              UNITED STATES MAGISTRATE JUDGE